Today is for 090908, people be Crenshaw for the appellant Catherine Hart for the appellee Luke McNeil. Ms. Hart. May it please the court, counsel, my name is Catherine Hart from the Office of the State Appellant Defender and I represent Michael Crenshaw. The state's case against Michael Crenshaw for criminal sexual assault had the following problems. There was no physical evidence of a sexual assault. The state, even though they had contact with the victim within 24 hours of the assault or alleged assault, did not send her for a rape kit. Wait a minute, does there have to be physical evidence in order to affirm a conviction? There does not have to be physical evidence to confirm a conviction. The evidence is, goes to how strong the state's case may or may not be. So the jury didn't have to believe the 15 year old because there was no evidence to testify that this is what happened? This was not a jury case. This was a bench trial. I'm sorry, a bench trial. Judge is looking at this girl and says, no, sorry, no rape kit, forget it. No, that's not what I'm saying. But this, the fact that there were certain errors in the state's case was something that the court, in fact, acknowledged. The fact that these were Illinois State Police investigators and they had contact with the victim in 24 hours, but they didn't send her to the hospital to get a rape kit. In addition, the victim had several odd and inconsistent statements over the course of a four or five month period. And lastly, the state police made no effort to record their interrogation of Michael Crenshaw or to have him sign a written statement. Other than the victim's testimony alleging Michael Crenshaw's assault, there were only two pieces of evidence that supported a finding of guilt and those two pieces of evidence should not have been admitted at trial. The trial court's abuse of discretion in admitting the involuntarily given inculpatory statement and the inaudible cell phone recording allegedly of the assault was extremely prejudicial. On the day of Michael Crenshaw's alleged confession, the two Illinois State Police inspectors picked up Michael Crenshaw and brought him to a police facility where they had the capability to audio and videotape the subsequent interrogation of Michael Crenshaw. For reasons never adequately explained, the Illinois State Police inspectors failed to record the interview in any way. Not only did they not audio or write out a version of the statement, nor did they write one out for him and have him sign it. The entire five hours of interrogation were reduced to notes which were then summarized into a police report and the investigators destroyed their notes. The actions of the state police are suspect given Michael Crenshaw's testimony that prior to being picked up for the interrogation, he ingested a variety of sleeping pills and muscle relaxants. Had the police recorded this interview, Michael Crenshaw's mental status and ability to voluntarily waive his Miranda rights would be much more clearly analyzed. Counsel, those are all worthy points, but the trial court was aware of all that and still found the officer's testimony to be credible. That's correct and we believe that the court abused its discretion in finding that the Miranda rights were voluntarily waived. The court stated that Michael Crenshaw was responsive, but even if you look at the police report summary and certainly if you look at the hearing and at trial, responsive just means that he made body movements or occasionally said yes or no. What is the essence of your argument that he was not capable of waiving his Miranda rights? What is the essence? What is that? The essence of the argument is that Michael Crenshaw ingested a number of sleeping and muscle relaxant pills. What is the evidence of that? Well, there's his testimony, there's the pills that were recovered at his house, and then there is even the information that we have from the police officer. Let me see if I got this right. Your client testifies, I took X number of pills and I'm just totally oblivious to what's going on. That's believable. But then on the question of, gee, can you waive Miranda rights and give a statement, he was not, that part is not believable. There are two different situations. Well, is he worthy of belief with regard to the historical facts of what he ingested? One is an action, which is that he took these pills. Is that a yes or a no, counsel? Is he worthy of belief when he says as to what he ingested, what he drank and what pills he took? He never claimed that he was drinking. Yes, he is worthy of belief about the pills, especially since we have pills that were recovered. So his intoxication due to the pills affected his ability to understand Miranda and waive his rights, but not affected his ability to recall what he ingested? There's, the standard for voluntariness has to do with his ability to respond and waive his rights. That involves a level of ability, intellectual ability and process that is not the same as, did I take a handful of pills? Because it's more or less. I believe it's more than the memory of, did I take a bunch of pills? On top of which, he took a bunch of pills when he was sober and unimpaired, and then he took the pills and the interrogation followed. And it was during the interrogation when his abilities were impaired, that he doesn't remember. How do we know anything about what he ingested other than what he says? We have the prescription pill bottles that were empty. And we can see from even the police officers' recount of the interrogation where they say, well, we think he said this, and well, did he actually say that? No, he didn't actually say that, but he moved a certain way. And that's what we believe he said, based on the fact that he moved a certain way. Or he shook his head, and so we took that to mean this. Even at the end of this five-hour interrogation, they put a statement in his mouth, and then he said, I guess, and that was his inculpatory statement. Everything that we know about what... So that's a sign that he's intoxicated? It's a sign that he is, has the things that Dr. Chapman put in his report. As opposed to maybe sitting there talking to a couple of cops who think he's done some bad stuff? You think this is a time we should expect him to be chatting? There is certainly information in the record to support the inference that he was impaired. And the police officers had at their disposal an audio and videotape equipment. So we're going to punish the police because they didn't record it? The police should have recorded it. We're going to punish the police because they didn't? I don't believe it's punishing the police. This is kind of a version of the deterred exclusionary rule? We're going to exclude this evidence and that will teach them the next step? There is some precedent for the fact that police should be recording interviews. And yes, in a sense, they need to learn that the best way to get a statement kept in a trial is to record it. As I said, the court's finding wasn't abuse of discretion. There's certainly enough information in the record to show that Michael Crenshaw was impaired. The fact that there's enough doesn't mean that there's abuse of discretion? Is there enough evidence in the record to show that he was not impaired? I don't believe that there is enough evidence in the record. I think the record really shows that he wasn't impaired. Do you believe him or you don't believe him? How can you say one way is unreasonable and the other way is reasonable? Because if you look at even what the state police describe as the course of the interview, it's clear that Michael Crenshaw was basically unresponsive. And to say otherwise is misleading. To say that he was responsive because he sort of leaned a certain way, it's just simply... Did he take these pills because he was trying to commit suicide? He says that he took the pills because he was trying to commit suicide, but that has no bearing on the voluntariness of his confession. Well, it has a bearing on whether he's making up a story or not. That he took the pills or that he attempted to commit suicide. He said that he wrote suicide notes, which he only pointed out after he was released from custody. However, the police found that night a notepad when they were searching the house with impressions that led them to believe that there was a suicide note. So there was one. In fact, they called the inspectors to tell them there's possibly a suicide note here. And when he was... So those impressions of the police are okay? Those inferences are worthy of belief by us in the trial court? That is that the police that were at his house searching found a notepad with actual physical impressions on it that indicated that a suicide note had been found. But the other police impressions are not worthy of belief? The police impressions of the two investigators who interrogated Mr. Crenshaw? Right. I believe that their impressions, even if you look at the record, it's clear that Mr. Crenshaw was not responsive. But why did we reject the trial court's credibility findings as to those two individuals? Well, you can also look at the way... the final things that the court said about this decision. She said Michael Crenshaw was responsive, which we can see from the police report summary and from the cross-examination and even the direct testimony at trial, at the discretionary and then later at the trial, that most of the time he, in fact, wasn't responsive. She also relied on the fact that he was a correctional officer, which is totally irrelevant to whether he was impaired because of muscle relaxants, relaxants and sleeping pills. And she relied on the fact that she had worked at a psychiatric hospital for seven years, which is totally irrelevant and outside the record. So we can look at what they testified to and make a decision that he was impaired. This court absolutely can do that, can find that the trial court abused his discretion and that Michael Crenshaw did not voluntarily waive his Miranda rights. What's the standard of review? It's abuse of discretion. Pardon? Abuse of discretion. Whether... That's regarding the inculpatory statements, whether they're properly admitted. Yes, correct. Isn't that just with regard to the historical facts? So we have a bifurcated standard of review? Yes, it's de novo as to the law. Okay. Yes, Ron, I apologize. Where do you draw the line here? Where do you draw the line? What are the historical facts found by the trial court and what are the conclusions of law that we review de novo? Some of the historical facts are on the record and so it's not necessarily credibility determination, it's things that are said during the course of testimony. In terms of the law, it's the law of whether Miranda is voluntarily waived or not and in this case, how serious his impairment was. At what point does that make it involuntary, an involuntary waiver? The second erroneously admitted piece of evidence was the largely inaudible cell phone recording that HH allegedly made of her interaction with Michael Crenshaw during the assault. The recording in question is less than 60 seconds long. The inaudible portion of this less than 60 second recording are so substantial as to render the recording untrustworthy as a whole. What does that mean? Because the recording is almost wholly inaudible, it's not, it's untrustworthy in that we don't know that it is what it purports to be. A witness say this is a recording of what happened? But the recording has to, on its own, be discernible. It's not just about what HH says the recording is. The recording has to be... You mean it's not enough for her to say this is an authentic recording of what noises were being made at the time? No, it's not enough. What case stands for that proposition? Well, there's people versus Manning and people versus Hunt that both say that the recording has to be audible or substantially audible in order to be relevant. And did anyone in Manning and Hunt say that yes, this is a recording of what I heard? In both Hunt and Manning, there were witnesses available to testify as to the conversations. It's not clear... I don't think that's responsive to the question I just asked you. I didn't ask if witnesses were available. I said was there testimony in the record saying that these recordings were what I heard? It's not clear from the record in Hunt or Manning. But it is here, isn't it? Didn't HH say, yeah, these were the... But in both of those cases, the determination came down upon is the evidence relevant? That's a different subject, though, isn't it, counsel? No, because it is only relevant if it is audible. The first question is, is there a foundation for it as being a recording of what happened? You're telling us that, no, there isn't. I don't understand how that can be if we have a witness who says, yeah, I was there. This is what I heard. There are two different issues. One issue is, does it have a foundation to come in as a recording under the wiretap statute? And the answer to that is yes. The second question is, does it come in as relevant evidence? And our argument is no, it does not come in as relevant evidence because it is largely inaudible. Well, that's different from there's no foundation, isn't it? But we didn't argue, I didn't argue that there was no foundation. I thought you just did, but maybe I misunderstood. I apologize if I was unclear. When you said no one could say what it was that was being heard. That has to do with the relevance. Because you don't know what the recording is, it's not clear how it's relevant to the case. And under those circumstances. Well, the question is, does the primitive value substantially outweigh its prejudicial effect? If we can't hear, according to you, what's being said, explain how it's prejudicial. Because if you hear the recording, it sounds, it's very short, and it is a fairly disturbing recording of what sounds like somebody in distress. But you have no idea who the person is, who the two people are, if there are two people. But didn't HH say who the person was? That has to do with, as you said, the foundation. The relevance of the piece of evidence, you have to know what the recording is of. Oh, you mean the recording itself has to say, by the way, this is HH now making these noises. Otherwise it's not admissible? You have to know what is happening on the recording, or else it is inadmissible. And in this case, the recording is largely inaudible. It is, therefore, not relevant. So as to your relevance issue, the state says in its brief, the only findings that were made by the trial court as a result of the recording was that a girl identified by the defendant as HH was in distress, and someone was whispering to her. That sounds relevant. Do you agree? The fact that the court found that there was a girl whispering? The court essentially found that she seemed to be in distress, and it was her, and that someone else was there whispering, which caused her the distress. But that doesn't make it relevant enough to this particular case. Why not? And in addition to that, Your Honor, there is the actual cell phone recording, which when played at trial, everyone acknowledged was totally inaudible. That is what was admitted into evidence. Was it inaudible? Pardon? Totally inaudible? It was pretty much totally inaudible. Pretty much totally inaudible. Well, the court says that was inaudible. Was a girl speaking? A girl saying something? From the cell phone? No, there's no... You can't hear the... You can't tell... I mean, you'll listen to the cell phone yourselves. I'm trying to think of the things you said. Was there an indication of someone in distress? There is an indication of someone moaning. Okay. It could be a girl or a boy. Okay. And there's whispering. That is what you can hear from the cell phone. Why isn't that enough? Because you have no idea what is happening on the recording, and yet if it is what it purports to be, it's incredibly disturbing and prejudiced. It's very... The very fact that HH says it is a certain thing, and you can't tell from the recording itself, is what makes it so prejudicial because you hear it and you imagine what's happening. You imagine because you can't really determine what is going on in the recording. That is, in essence, why it shouldn't have been admitted. It's way more prejudicial than probative. The problem in this case is that... So let's say HH says, I was being forced to have sex and I didn't want to, and this is a recording that substantiates that and it's too disturbing, so the prior faction have been able to hear it? The problem with the evidence is that you don't know what's happening. And... I don't understand how it is we don't know what's happening when HH tells us from the witness stand under oath what's happening. But that is bolstering the evidence with testimony that doesn't have to do with whether this...  It goes to its foundation, but it doesn't go to its relevance. You have to be able to hear the... So she has to say, this is HH, I'm being raped as we speak, otherwise it's not admissible. No, but you should be able to hear more than you can in this recording. This recording is, it's inaudible. And that is, the very nature of its inaudibility is what causes it to be so prejudicial. The stepmother found it persuasive. The stepmother also said that she couldn't be sure that it was Michael Crenshaw. And regardless of what the stepmother testified to, the recording has to be audible on its own. It has to be relevant on its own, without regard to this other testimony. Doesn't the recording support the victim's testimony that she made a recording? She made a recording, we don't know... Is it her on the recording? She said I made a recording, here's a recording. Isn't that some support? That is certainly foundation for admissibility, but the evidence still has to be relevant. And it's not relevant because it's wholly inaudible. And it's untrustworthy to be what it purports to be because you can't tell. If the defense counsel had been able to show there was no recording, wouldn't that have been relevant? If there had been no recording? If he was able to show there was no recording, it would have been relevant to show that the victim was lying. The fact that the victim has a recording is some support for her testimony that she made a recording, isn't it? It's not support for the evidence that they're trying to get it in for, which is that it's a recording of the assault. The fact that she had a recording on her phone just means that she had a recording on her phone. We don't know because when you hear the recording, you cannot tell what it is. I see that I'm out of time. You will have rebuttal, counsel. Excellent. Mr. McNeil. May it please the court. Counsel. I'll tackle the inadmissible cell phone recording first since it's fresh. I think it's important to look at the specific findings that the trial court made. That being that the defendant couldn't be identified by the recording. They specifically stated that in their findings. So any prejudice, defendant argues that the possible prejudice could happen based on this audio recording being admitted, be that the trial court could speculate that it was defendant doing the whispering on the tape. But again, trial court specifically stated that in its findings. They couldn't identify defendant or whoever it was doing the whispering in the tape. Again, you quoted my brief in what the state or what the trial court did find in it as what the recording has to do with it. So any prejudice that could have happened was obviously did not occur based on the trial court's specific findings, specific language. Also, there was overwhelming evidence presented against defendant in the form of a confession, which I'll get to corroborating testimony from agents Gardhouse and Kaufman that defendant did confess and testimony from the victim herself that she indeed was sexually assaulted by defendant in this case. As far as the involuntary confession, whether he validly waived his Miranda rights, standard of review, as far as I could tell, is manifest way to the evidence instead of abuse of discretion. And from what I remembered of the record, the prescription pill bottles that were found at his house expired. They were empty and they expired anywhere from 2006 to 2008. So a few years ago, no really evidence that they would have been emptied right then or that they were even filled within the past couple of years. Did the defendant have an expert who testified that the defendant took the pills? There was a report from a medical doctor which was inconsistent with defendant's testimony at the hearing. Dr. Chapman's report where defendant told him he did take 50 to 60 sleeping pills and muscle relaxers, he told Dr. Chapman the wrong date and the wrong time and admitted to that at the motion to suppress hearing. And I think also in the report it stated that he didn't eat or drink water for the three days he was in jail, but he wasn't sick upon release from the jail. Again, there was also inconsistencies or at least illogical testimony from defendant based on the suicide notes that he somehow came into light three days later after he got out of jail. He gave it to his stepmother. When pressed on cross-examination on whether if his plan worked, if the pills did kill him like they were supposed to, what would happen, presumably these notes would remain hidden. Defendant really didn't provide an answer for that. He just stated that the suicide notes were provided to his stepmother after he got out of jail. As far as Garthaus and Kaufman's testimony, it was consistent with their report and it was also consistent with each other. There was evidence from them that defendant was responsive, that he was alert, that he was engaged in the interview, and that he even provided information above and beyond just responding to their questions. There was evidence that... Well, did he really make any inculpatory statements other than, I guess? That was the big one. Again, that was a summary of their... I wish that there was a recording of it as well, but that was the summary of their writing and I took it to mean that there were affirmative answers before that. They put it all together. Defendant replied in the affirmative to that as well. Again, the demonstration of non-responsiveness by defendant were... It seemed to be on the pretty embarrassing, pretty accusatory questions where I don't know if any defendant, no matter what they took, would just come out and volunteer that information. He admitted that he went upstairs to get a massage. He did admit that. Finally, after a few denials, he admitted that his pants were off and that she had touched his penis. Again, the main confession, the main nail in the coffin, was at the end when he did confirm that the story they put together, which I presume to be based on affirmative answers earlier in the interview, was an accurate story. Again, looking at the light, looking at the evidence in the light, I'm most favorable to prosecution with the way the evidence standard is required. The trial court did not err in believing the corroborating and consistent testimonies of Garthaus and Kaufman over the incredible and inconsistent testimony of the defendant at the motion to suppress hearing. The trial court didn't err in denying that motion. Any other questions? I see none, so thank you, counsel. We now will have a vote. I mostly wanted to focus on Mr. McNeil's statement. I took it to mean that there had been a bunch of affirmative responses, and they cobbled together the summary. That is precisely what's wrong with the statement and why the voluntariness is under question. If you look at several areas in my brief, for instance, page 34 in my initial brief, where Inspector Garthaus says, Michael was repeatedly asked if he observed the condom in a lit room. Michael's tone of voice appeared to become irritated. Then he stated his house was lit, meaning he would have observed it in a lit room because his house was lit. Defense counsel said, he didn't say that, though, did he? Garthaus, no, but that's how we perceived it. Defense, that's what you took it to mean. Yes, that's how I interpreted it. And then later on, when talking about his conversation and whether he was responsive to questions, Agent Kaufman says, if there were times, you know, we were questioning him in particular about something, you know, when he verbally didn't respond, there was always, you know, a physical response of some sort that would lead us to believe that he was understanding what we were asking. And that is the tenor of the entire interview. And that is why it supports the decision that he was under the influence of drugs and unable to waive his Miranda rights. I apologize for my earlier misstatement. The standard is manifestly erroneous as to a determination as to whether the trial court was correct in suppressing the statement. He signed the Miranda statement very quickly after they took him into custody, didn't he? Yes. If he was able to intelligently sign the statement at that time, isn't that good enough? From the time that he would have ingested the drugs to when he would have signed the Miranda statements, I believe it's about an hour. And so I think that that is still plenty of time for the drugs to have been working. In fact, when he got into the truck, he didn't want to drive, and he told the inspectors that he was very tired, and that's why he didn't want to drive. So the drugs were already working on him at that point. You were talking about how at the end of the five-hour interview, you made a lot out of the fact that they set out an inculpatory scenario, and he said, I guess. But that's not the question, right? The fact that he was like that after five hours of interview is not the question. The question is, how was he doing in the first few minutes of the interview? How was he when he waived his Miranda rights? And how was he during the subsequent interview, was he able to respond and process? I believe that with the information, Dr. Chapman's report, and the timeline that even the police provide, that there was sufficient time, there definitely was sufficient time for the drugs to have entered his system and affected him. And the course of the interview simply supports the fact that he was not responsive and under the influence of drugs. Is there another explanation, the fact that he didn't want to admit anything? There is another explanation, absolutely. But I believe that if you look at the way that this interview went, the fact that it wasn't audiotaped or videotaped, the fact that a statement wasn't written out by the police and signed by the defendant, nor did he write one out, which is a very common practice by police, even if they don't audio or videotape it, all of those things lead to the conclusion that it supports the inference that he was incapacitated. If this Court has no further questions, the appellant would respectfully request that he reverse his conviction to remand for a new trial. Okay, thank you Ms. Hart, thank you Mr. McNeil. The case is submitted and the Court stands in recess until...